IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STEVIE THOMAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:14-CV-00897-LSC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

**I.   Introduction**

The plaintiff, Stevie Thomas, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). Mr. Thomas timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Thomas was forty-four years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school education. (Tr. at 52, 129.) His past work experiences include employment as a clamp truck driver and a

double back operator. (*Id.* at 47.)  Mr. Thomas claims that he became disabled on July 16, 2010 due to diabetes mellitus, cervical degenerative disc disease, hydrocele, status post rotator cuff repair of the left shoulder, and chronic pain. (*Id.* at 128.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA").  *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments.  *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The

decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Mr. Thomas meets the nondisability requirements for a period of disability and DIB and was insured through the date of her decision. (Tr. at 22.) She further determined that Mr. Thomas has not engaged in SGA since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's diabetes mellitus, mild cervical degenerative disc disease, and status post rotator cuff repair of the left shoulder are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, she found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 23.) The ALJ did not find Mr. Thomas's allegations to be totally credible, and she determined that he has the following RFC: to lift and carry up to 20 pounds occasionally and 10 pounds frequently; to sit for six hours in an eight hour day and walk six hours in

4

an eight hour day; he should never climb ladders, ropes, or scaffolds and should avoid all exposure to workplace hazards; he can frequently climb ramps and stairs and can frequently balance, stoop, crouch, kneel, and crawl; he can occasionally push and pull with the left upper extremity and can occasionally reach in all directions with the left upper extremity; he should avoid concentrated exposure to temperature extremes, wetness, and humidity; and he can maintain attention and concentration for two-hour periods at a time.  (*Id*. at 26-27.)

According to the ALJ, Mr. Thomas is unable to perform any of his past relevant work, he is a "younger individual age 18-49," and he has at least a high school education, as those terms are defined by the regulations. (*Id*.) She determined that the transferability of skills is not an issue in this case. (*Id*.)  Because Plaintiff cannot perform the full range of light work, the ALJ used Medical-Vocation Rule 201.25 as a guideline and sought the testimony of a Vocational Expert ("VE") to find that there are a significant number of jobs in the national economy that he is capable of performing, such as gate guard, security system monitor, and appointment clerk. (*Id*.) The ALJ concluded her findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." (*Id*.)

## II.     Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the

proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III.  Discussion

Mr. Thomas alleges that the ALJ's decision should be reversed and remanded for two reasons. First, Plaintiff argues that the ALJ should have at least granted him a closed period of disability from his onset date of July 16, 2010, until July 19, 2011, the date that his treating physician released him to work with no limitations. Second, he believes that the ALJ's RFC findings are not based on substantial evidence, primarily because of the ALJ's alleged failure to obtain a medical source opinion from a consultative examiner.

### A.  Twelve Month Disability Period

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Both the impairment or impairments and the inability to work must last for at least twelve consecutive months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 404.1509, 416.905(a), 416.909; Social Security Ruling ("SSR") 82-52; *Barnhart v. Walton*, 535 U.S. 212, 217-20 (2002). In addition, a claimant cannot meet the twelve-month duration requirement by combining two or more unrelated severe impairments. *See* 20 C.F.R. §§ 404.1522, 416.922; SSR 82-52. Thus,

> the duration requirement to establish disability will not be met and a disability claim will be denied based on evidence that, within 12 months of the onset of an impairment which prevented substantial gainful activity and before [the Commissioner has] issued any notice of determination or decision finding disability, the impairment no longer prevents substantial gainful activity.

Determining Disability and Blindness; Substantial Gainful Activity Guides, 65 Fed. Reg. 42,772, 42,774 (Jul. 11, 2000), quoted in *Walton*, 535 U.S. at 217.

Here, Plaintiff asserts that the ALJ should at least have found a closed period of disability from his alleged onset date of July 16, 2010, until the date Dr. Buggay, his treating physician, released him to work with "no limitations" on July 19, 2011.

According to Plaintiff, this date range satisfies the durational requirement for disability. However, as explained herein, the record establishes that Mr. Thomas's limitations did not prevent him from engaging in SGA for a consistent twelve month period. This is because both Dr. Buggay and Plaintiff's examining physical therapist opined that Plaintiff was capable of returning to at least medium work before July 2011, and their treatment records do not indicate he was unable to engage in SGA for any continuous twelve month period.

Plaintiff underwent arthroscopic surgery to his left shoulder in order to repair his rotator cuff on July 30, 2010. (Tr. at 257). Due to continuing problems with his shoulder, Plaintiff underwent a second procedure on January 26, 2011. (Tr. at 248). Only six months passed between these two procedures, so even assuming *arguendo* that Plaintiff was unable to perform SGA between the first procedure and the second, he did not meet the requirement that the condition last for twelve continuous months. *See* 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). After his second procedure, Dr. Buggay noted in February 2011 that Plaintiff was "doing well," and while his shoulder remained tight in external rotation, he was "not having much pain." (Tr. at 284). In March, Dr. Buggay limited Plaintiff to not lifting any weight greater than five pounds and restricted him from driving due to "some activity and exercise related pain." (Tr.

at 283). In May 2011, Plaintiff reported "just some soreness." (Tr. at 281). Dr. Buggay found Plaintiff had "markedly improved," and allowed him to begin driving again. (*Id.*) Importantly, on June 9, 2011, Dr. Buggay released Plaintiff to perform medium work with a limitation to occasional overhead reaching. (Tr. at 280). Dr. Buggay opined that he "really [did] not think [Plaintiff's condition] is going to need any kind of ongoing treatment." (Tr. at 280). He showed Plaintiff how to do some "gentle stretches" and advised him that he could take over-the-counter anti-inflammatory medication. (Tr. at 280).

Like Dr. Buggay, Plaintiff's physical therapist also noted Plaintiff's improving condition and his ability to work in some capacity before July 19, 2011. In late February 2011, about a month after the procedure, the physical therapist advised Plaintiff to slowly wean himself off the sling. (Tr. at 318). In March 2011 Plaintiff reported his pain was a one out of ten, and "only hurts in weather." (Tr. at 315). At his last appointment in April, he reported his pain was a zero out of ten. (Tr. at 311). On May 27, 2011, Plaintiff participated in a physical therapy examination that lasted more than two hours. (Tr. at 270-76). The examination, which involved extensive physical testing, concluded that Plaintiff was capable of heavy work as defined by the Dictionary of Occupational Titles. (Tr. at 270).

Plaintiff has not challenged these doctors' findings. These opinions were given before July 16, 2011, which would be twelve months after the alleged onset date of July 16, 2011. Plaintiff argues that he remained disabled until at least July 19, 2011, when Dr. Buggay released him to work with "no limitations." (Tr. at 299). However, the Social Security Act defines disability as "inability to engage in any substantial gainful activity," meaning that a person capable of medium work, even with some postural limitations, is not unable to engage in any SGA. *See* 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Because there was substantial evidence in the record to find that Plaintiff did not have a limited period of disability for at least twelve months, this Court finds that Plaintiff's first argument lacks merit.

B.   **The ALJ's RFC Finding**

Plaintiff also contends that the RFC assessment is erroneous for several reasons. First, he contends that the ALJ erred in failing to obtain a medical source opinion from a consultative examiner. A medical source opinion may be obtained "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the Commission] to make a determination or decision on [a] claim." 20 C.F.R. § 404.1519a(b). However, an ALJ is not required to obtain an additional medical source opinion if the record already contains sufficient evidence

for the ALJ to make an informed decision. *See Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 1999). Furthermore, the Plaintiff must show prejudice in the ALJ's decision before the case may be remanded for further record development. *See Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997).

In this case, there was already sufficient evidence for the ALJ to make an informed decision as to whether Plaintiff could work without needing to order a consultative examination. The ALJ based her decision on several medical opinions already in the record. First, she gave substantial weight to treating physician Dr. Buggay's opinions and treatment notes. (Tr. at 27.) As discussed in the preceding section, Dr. Buggay approved Plaintiff for medium work in the months following Plaintiff's second shoulder operation. (*Id.* at 283, 270.) Dr. Buggay also noted improvement on February 22, 2011, less than a month after the second surgery. (*Id.* at 284.) Indeed, the average pain Plaintiff reported decreased steadily through February and March 2011, until in April 2011 he stated he experienced no pain. (Tr. at 311, 315, 316, 317, 322). Second, the ALJ considered the examining physical therapist's opinion on May 27, 2011, written after a two-hour examination of the plaintiff, which opined that he was capable of heavy work. (*Id.* at 270.) The two-hour examination involved observing Plaintiff perform numerous physical tasks. (Tr. at 269-276). He saw Plaintiff sit for sixty minutes and sit/stand for over two

hours. (Tr. at 275, 276). He also saw Plaintiff lift and carry up to fifty-five pounds, and watched him climb fifty-two stairs up and down in under two minutes with no increase in pain. (Tr. at 274, 275). Finally, the ALJ gave great weight to the State Agency medical consultant's opinion that Plaintiff could perform light work as of January 2012, stating that it was supported by the evidence on record and fully took into account Plaintiff's complaints of pain. (Tr. at 27.) State agency consultants are highly-qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. §§ 404.1527(e)(2)(i); 416.927(e)(2)(i), SSR 96-6p.

Mr. Thomas claims that the ALJ should have ordered the consultative examination because the RFC assessment did not take into account his medical records from the following year, 2012, after the treating physician, physical therapist, and state agency consultant had already issued their opinions in 2011. The specific information from 2012 that Plaintiff refers to is limited to one hospital visit where Plaintiff complained of shoulder pain and groin pain, four occupational therapy sessions, and an ultrasound of Plaintiff's groin. (Tr. at 360-62, 367-69, 370-73.) Regarding Plaintiff's shoulder pain, during the hospital visit in February 2012, the doctor made the observation that Plaintiff's back was normal, although

his shoulders had a limited range of motion, and recommended that he seek physical therapy. (Tr. at 372.) The treatment record also notes that Plaintiff has an inguinal hernia for which he had previously sought treatment but had not followed up on the recommended surgery. (Tr. at 370). These mild findings are consistent with Dr. Buggay's opinion in June 2011 that Plaintiff had some limitation in his upper extremity range of motion, and degenerative disc disease in his cervical spine. (Tr. at 280, 371). The hospital visit does not demonstrate that Plaintiff's condition worsened in 2012. Then, in April and May 2012, Plaintiff received four physical-therapy treatment sessions. (Tr. at 360-62). At the final session on May 30, 2012, the therapist noted that Plaintiff was "within functional limits for strength" and range of motion and that no further physical therapy was indicated, although Plaintiff should continue to practice his exercises at home. (Tr. at 360). This finding is also consistent with Dr. Buggay's June 2011 opinion that Plaintiff's back and shoulder conditions could be treated with over-the-counter medication and "gentle stretches." (Tr. at 280). Finally, in March 2012, an ultrasound found small calcifications in Plaintiff's scrotum but did not indicate that they would cause the pain that Plaintiff reported. (Tr. at 367-69). These treatment notes do not assess any limitations with regard to Plaintiff's groin pain. Indeed, as the ALJ discussed, treatment records from April 2012 indicated as follows: "urology stated

that they found no clear reason for pt's [groin] tenderness and that he had a [sic] normal physical findings" (Tr. at 23, 364). The only evidence of Plaintiff's groin pain was his own testimony, and the ALJ found him less than fully credible, a finding that Plaintiff does not challenge on appeal. *See Hamilton v. Southland Christian School, Inc.*, 680 F.3d 1316, 1318-19 (11th Cir. 2012) (holding that issues that are not clearly designated in the appellant's brief are normally deemed abandoned). Although Plaintiff now argues that his groin pain "would affect push/pulling at least with the lower extremities," (doc. 8 at 10), his opinion as to the limitations that could possibly arise from groin pain does not constitute sufficient evidence to call the medical record or the ALJ's findings into question. As such, the ALJ's conclusion that the groin pain was not a severe impairment is not due to be disturbed on appeal.

In sum, since the treating physician's notes, physical therapist's notes, and the medical examiner's assessment in the RFC provide sufficient evidence for the ALJ's determination that Plaintiff was not disabled, and the records from 2012 do not show any worsening conditions not addressed by those physicians, there was no need for the ALJ to obtain a medical source opinion from a consultative examiner. *See Doughty*, 245 F.3d at 1281.

Plaintiff also argues that, pursuant to *Ingram v. Commissioner of Social Security*, 496 F.3d 1253 (11th Cir. 2007), the additional medical record he submitted to the Appeals Council renders the ALJ's decision as to his RFC erroneous. Generally, a claimant may present new evidence at each stage of the administrative process. *Ingram*, 496 F.3d at 1261 (citing 20 C.F.R. § 404.900(b)). The Appeals Council has discretion not to review the ALJ's denial of benefits. *See* C.F.R. §§ 404.970(b), 416.1470(b). However, the Appeals Council "must consider new, material, and chronologically relevant evidence and must review the case if the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Ingram*, 496 F.3d at 1261; *see also* 20 C.F.R. § 404.970 ("The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision."). When reviewing the Appeals Council's denial of review, the Court must "look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the [Appeals Council] must consider in making its decision whether to review an ALJ's decision." *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998).

In this case, the Appeals Council stated that it considered both the reasons Plaintiff disagreed with the ALJ's decision and the additional evidence submitted,

but found that none of this information provided a basis for changing the ALJ's decision. (Tr. at 2.) The Appeals Council did not err in refusing to remand to the ALJ based on the new evidence Plaintiff submitted. (Tr. at 379-87). The new evidence is a treatment note from July 2012 that reiterates Plaintiff's subjective complaints of groin pain, provides a tentative diagnosis that the pain is "neuropathic in origin," and notes Plaintiff has been experiencing burning upon urination. (Tr. at 381-84). The treatment note is cumulative of the note regarding groin pain that the ALJ had before her, and like the other note, it does not assess any particular limitations with regard to this groin pain. The diagnosis of a neuropathic origin appears to be the new information on which Plaintiff relies, but the diagnosis in itself does not show that Plaintiff's groin pain had become more limiting than it was at the time the ALJ determined it was not a severe impairment. *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on [his] ability to work" (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). As a result, the Appeals Council did not err in denying remand to Plaintiff, even in light of the new evidence that he submitted.

**IV. Conclusion**

Upon review of the administrative record, and considering all of Mr. Thomas's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON AUGUST 4, 2015.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
160704